UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-061 (RCL) |
| | : | |
| | : | STATUS: May 19, 2006 |
| TRAVIS SWEET, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**UNITED STATES' COMBINED RESPONSE TO
DEFENDANT'S MOTIONS TO SUPPRESS STATEMENT,
TO SEVER, AND COMPEL NOTICE OF OTHER CRIMES EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to Defendant Sweet's Motion to Suppress Statement With Incorporated Memorandum in Support Thereof (Motion to Suppress); Motion to Sever Defendant and Counts (Motion to Sever); and Motion For Notice By The Government of Its Intention To Introduce Other Crimes, Wrongs, Acts and Misconduct Evidence and Points and Authorities In Support Thereof (Motion to Compel Notice). In support of this opposition, the United States would show the following:

**FACTUAL BACKGROUND**

1. The defendant, Travis Sweet, was indicted on the charges of Unlawful Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Unlawful Possession With the Intent to Distribute 5 Grams or More of Cocaine Base and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2.

2. There are three co-defendants who were indicted along with the defendant. Curtis Wilson

is charged with Unlawful Maintenance of Premises to Manufacture, Distribute, Store and Use a Controlled Substance in violation of 21 U.S.C. § 856(a)(2) and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation 18 U.S.C. § 922(g)(1). Jerome Kinard is charged with Unlawful Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). Alonzo Patrick was charged with Unlawful Possession With the Intent to Distribute 5 Grams or More of Cocaine Base and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2. The indictment arose out of incidents that occurred on January 18, 2006 and January 24, 2006.

    3. On January 18, 2006, an undercover officer with the Metropolitan Police Department, King Watts, went to Apartment #101 at 3650 Minnesota Avenue, S.E., Washington, D.C. After the undercover officer knocked on the door, it was answered by a black male – that was subsequently identified on January 24, 2006 as Jerome Kinard – who then asked what did the undercover officer want. The undercover officer responded "twenty" and gave $20 in Metropolitan Police Department pre-recorded funds to Mr. Kinard in exchange for two ziplocks of a rocklike substance that later field-tested positive for cocaine. Mr. Kinard stated that he also had heroin. The undercover officer then left the area.

    4. On January 24, 2006, officers with the Metropolitan Police Department went to the same apartment to execute a search warrant. However, prior to executing the warrant, Officer Watts, again acting in an undercover capacity, went to the apartment and knocked on the door. The defendant opened the door. The undercover officer stated "what's up?, let me get six." The defendant then took $55 in pre-recorded funds from the undercover officer and went back into the apartment. The

defendant returned a short time later with a ziplock bag that contained several smaller ziplock bags. Each of the smaller ziplocks contained a white rocklike substance. The defendant then poured six ziplock bags into the hands of the undercover officer, placed the remaining ziplocks bags in his pocket, and then went back into the apartment. The white rocklike substance later field-tested positive for cocaine. The undercover officer then left the area.

5. Approximately ten minutes later, officers with the Metropolitan Police Department knocked on the door and executed the search warrant. When the door was not opened and the police waited a reasonable time, the police had to breach the door. Apartment 101 is a one bedroom apartment. There were a total of eight people in the apartment.

6. Upon entering the apartment, the police observed Mr. Wilson and Mr. Kinard running into the bedroom. After the scene was secured, the police recovered 24 ziplocks of cocaine, one box of .357 ammunition, and one 380 Davis Industries semi-automatic pistol, loaded with seven rounds, from the window area of the same bedroom.

7. When the police entered the apartment, Sergeant Curtis Sloan observed Mr. Patrick standing over the toilet bowl in the bathroom as it was flushing. Sergeant Sloan immediately went to the bathroom and observed an identification card and two plastic bags with a white rock-like substance in the toilet. Sergeant Sloan immediately retrieved the identification card and the bags from the toilet bowl. The identification card in the toilet bowl belonged to the defendant, Mr. Sweet.

8. Mr. Sweet was attempting to conceal himself behind the bathroom door when Sergeant Sloan entered the bathroom. Sergeant Sloan observed a plastic ziplock bag with an apple at Mr. Sweet's feet that contained thirty-five smaller ziplocks of a white rocklike substance that later field-tested positive for cocaine. The police recovered $226 from Mr. Sweet's person in a search incident

to his arrest.[1] Of that amount, there was $55 in Metropolitan Police Department funds. As Sergeant Sloan was patting down Mr. Sweet and Mr. Patrick for the officer's safety, Mr. Sweet spontaneously stated to Sergeant Sloan "Sir, can you get my ID? It is in the toilet." Sergeant Sloan indicated that he would retrieve the identification card. Mr. Sweet repeated this statement a moment later as Sergeant Sloan was waiting for the apartment to be secured.

9. In searching Mr. Patrick incident to his arrest, the police recovered six ziplocks of cocaine base from his right front pants pocket, $122 from his right rear pants pocket, and $24 in a wallet in his left rear pants pocket.

10. In addition to the items mentioned heretofore in this opposition, the police went on to conduct a search of the entire apartment and recovered the following:

    (a) One pound of marijuana and a 9mm Sig Sauer semi-automatic loaded with seven rounds, and a bag of ammunition from the kitchen area cabinet;

    (b) On a chair in the living room there was a black jacket containing 3 identification cards, including one belonging to Mr. Wilson and one .22 caliber Phoenix Arms semi-automatic pistol loaded with eight rounds;

    (c) Eighteen ecstasy pills, seventy-five ziplocks of crack cocaine, and sixty-six ziplocks of marijuana, and ziplock of unused bag from the living room table;

    (d) Several cell phones from the living room table;

    (e) A white pill bottle and a black box containing PCP from the freezer;

    (f) Clear bag and loose bag containing marijuana in the hallway leading to the living room;

    (g) Clear bag of unused ziplocks on bathroom floor;

    (h) A digital scale in the hallway closet and one in the kitchen cabinet;

---

[1] The police also recovered a second identification card from Mr. Sweet's left front pants pocket.

    (i) Door locks and keys;

    (j) A 9mm handgun from along side of 3650 Minnesota Avenue.

    (k) Mail matter belonging to Mr. Wilson from the bedroom; and a

    (l) a Northface black coat.

The rocklike substances found through the apartment and on the various occupants were determined to be cocaine base.

    11. The evidence will show that Mr. Wilson, while not a legal lessee, was in control of and occupied the apartment.

## ARGUMENT

The Motion To Suppress Should Be Denied
Because Defendant's Statement Was A
Spontaneous Utterance
And Not The Result Of Police Interrogation

    12. The Motion to Suppress should be denied because the Mr. Sweet's statement to Sergeant Sloan – "Sir, can you get my ID? It is in the toilet." – was a spontaneous utterance and was not the result of an interrogation by the police. While the United States would concede, for purposes of this motion, that the defendant was in custody at the time of the statement, he was not being interrogated within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966).

    13. It is well established that a suspect in police custody must given a warning about his or her rights before they are subjected to interrogation, and that any statement made by the suspect in response to an interrogation be the product of a knowing, intelligent, and voluntary waiver of rights. Miranda v. Arizona, supra, 384 U.S. at 478. It is also clear that, while a suspect may be in custody, there is no violation of Miranda if the suspect volunteers a statement in absence of an interrogation.

Rhode Island v. Innis, 446 U.S. 291, 300 (1980).  Here, the defendant was in the process of being patted down for the safety of Sergeant Sloan, as the apartment was being secured by the police, when the defendant made the statement about retrieving the identification card.  Indeed, Sergeant Sloan, focused on ensuring the safety of himself and his fellow officers, had not yet made any statements to the defendant or asked any questions.

  14.  An interrogation has been defined to mean words or actions that the police should know are reasonably likely to elicit an incriminating response.  Rhode Island v. Innis, 446 U.S. at 301.  In contrast, questions, statement and other police activities that are part of the standard booking process are not viewed as interrogation.  Pennsylvania v. Muniz, 496 U.S. 582 (1990).  Here, Sergeant Sloan's conduct do not amount to an interrogation.  Therefore, the Motion to Suppress should be denied.

The Motion to Sever Should Be Denied
Because The Defendants And The
Various Counts Were Properly Joined

  15.  The Motion to Sever should be denied because the charges against each defendant are all part of a common scheme or plan to sell narcotics out of Apartment 101.  It is well recognized that a trial court has wide discretion in resolving issue regarding severance.  Zafiro v. United States, 506 U.S. 534 (1993); United States v. Gbemisola, 225 F.3d 753, 760-61 (D.C. Cir. 2000).  The Court should exercise its discretion and deny the Motion to Sever.

  16.  Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants and charges where the charges arise from "transactions connected together or constituting part of a common scheme or plan."  See United States v. Eiland, 406 F. Supp.2d 46, 49 (D.C. 2005); United States v. Gray, 292 F. Supp.2d 71, 86 (D.C. 2003).  In addition, the preference in this circuit is for

jointly indicted cases to be jointly tried. United States v. Eiland, 406 F. Supp.2d at 50 (citations omitted). "[J]oint trials provide the advantages of preserving judicial resources and promoting consistent verdicts." Id. See also United States v. Long, 905 F.2d 1572 (D.C. Cir.), cert. denied, 499 U.S. 948 (1990). Here, the evidence will show that the defendants were engaged in a common plan to sell narcotics out of the apartment controlled by Mr. Wilson. It is clearly in the interest of judicial economy and promoting consistent verdicts for one jury to hear the evidence of what happened on January 24, 2006 and what the police found when the entered the apartment. With the exception of the distribution charge arising out of Mr. Kinard's conduct on January 18, 2006 as he distributed crack cocaine from the front door of the very same apartment, all of the charges in the indictment are based upon Mr. Sweet's sale of crack cocaine at the front door of the apartment and what the police found when they executed the search warrant only moments later.

      17. The appellate court has stated that "a series of acts or transactions" is "two or more acts or transactions connected together or constituting parts of a common scheme or plan" where there is a logical relationship between the offenses. United States v. Brown, 823 F.2d 591, 598 (D.C. Cir., 1987)(quotation omitted). The conduct at issue in Apartment 101 arises from a common scheme or plan within the meaning of the circuit court's analysis because, despite the separate charges against each defendant, there clearly is a logical relationship between all the charges here in that they all involve an effort to sell narcotics from said apartment.

      18. Indeed, all of the charges revolve around Apartment 101. First, in addition to being a convicted felon in possession of a firearm, Mr. Wilson is charged with unlawful maintaining Apartment 101 to distribute and store narcotics. In turn, Mr. Kinard and Mr. Sweet are charged with distributing crack cocaine from the front door of Apartment 101. Mr. Sweet and Mr. Patrick are also

charged with possessing 5 grams or more of crack cocaine as the police entered Apartment 101 following the sale by Mr. Sweet only minutes earlier. In contrast to a public park or street where it could be simply coincidence that defendants are charged with conduct arising on the street, the defendants are all charged with conduct that occurred at the front door of, or inside of, a one bedroom apartment. In sum, Apartment 101 was being used by the defendants as a storefront for selling drugs. Therefore, there is undoubtedly a logical relationship between the charges and they are properly tried together once in front of the same jury.

19. The defendant's argument that the charges and defendants should be severed under Rule 14 of the Criminal Rules of Criminal Procedure is equally unavailing. For example, the defendant argues that the possession with the intent to distribute "is based on the circumstance that Mr. Sweet was found within the apartment on the day of the search." Motion to Sever, p.4. This argument ignores the evidence that (1) Mr. Sweet sold crack cocaine only minutes before the police entered the apartment, (2) Mr. Sweet's effort to conceal himself behind the bathroom door reflect a guilty conscience, (3) the significant amount of cash found on his person, (4) that cash included $55 in pre-recorded funds, (5) the thirty-five ziplocks of cocaine found at his feet, (5) the drugs and drug paraphernalia strewn about the apartment in plain view, and (6) his identification card was found in the toilet with more cocaine that Mr. Patrick was attempting to flush away and hide from the police. Plainly, the case against Mr. Sweet is exceedingly strong and the effort to suggest that the case against him is not as strong as the "overwhelming" case against Mr. Wilson defies logic. While the government's case against Mr. Wilson is overwhelming, the case against Mr. Sweet is just as strong, if not stronger, in light of the fact that he sold crack cocaine to an undercover officer.

20. Moreover, the mere fact that there are different charges against different defendants does

not warrant severance. While there is undoubtedly some evidence that will apply to the other defendants, severance is not warranted where there is substantial independent evidence of each defendant's guilt. United States v. Tarantino, 846 F.2d 1384, 1398 (D.C. 1988). Here, there is ample evidence of each defendant's guilt and the Court is plainly able to instruct the jury regarding their obligation to consider each defendant's guilt independently. Zafiro v. United States, 506 U.S. at 539-41.[2]

21. Although the defendant makes a last ditch effort to save the motion to sever by referring to potential problems under Bruton v. United States, 391 U.S. 123 (1968), the Motion To Sever fails to identified any such problems. Indeed, that is because there are no such problems. The government intends to offers the pre-arrest statements of Mr. Kinard when he sold crack cocaine to an undercover officer on January 18, 2006. However, those statements deal only with the transaction at hand and in no way implicate Mr. Sweet. Similarly, the government intends to offer Mr. Sweet's pre-arrest statements to the undercover officer and his request that Sergeant Sloan retrieve his identification card. As was the case with Mr. Kinard, Mr. Sweet's statements do not implicate the other defendants. In sum, the defendant's reliance on Bruton is misplaced.

22. Likewise, the defendant's effort to reserve his right to seek a severance based upon inconsistent defenses with his co-defendants is unavailing. Indeed, the defendant again fails to point to any conflict, let alone one that would warrant severance.

23. In conclusion, there is not a sufficient for this defendant to seek a severance and the

---

[2] The Motion to Sever suggests that the jury may seek to convict all of the defendants because of the mere presence of guns in Apartment 101 and, therefore, the counts should be severed. There is no basis for this argument and it ignores the fact that the Court is amply able to instruct the jury to consider the evidence against each individual defendant.

motion should be denied in its entirety.

The United States Hereby Gives Notice
Of Its Intent To Offer Evidence Of
Other Crimes, Bad Acts and Misconduct
<u>That Is Intertwined With The Charged Offenses</u>

24. The Motion to Compel Notice seeks an order from the Court compelling the United States to provide notice of its intent to offer evidence of other crimes, bad acts, and misconduct. Although the motion seeks information that goes beyond the purview of Rule 404(b) of the Federal Rules of Evidence, the United States does not object to providing notice to this defendant – as well as the other defendants – of its intent to offer such evidence. Alternatively, the evidence shoulkd be admitted as being inextricably intertwined with the charges offense.

25. The Court should grant leave to the United States to introduce into evidence all of the material and/or items recovered from Apartment 101.

26. Evidence should be admitted where it is intrinsic to and intertwined with the charged offense. <u>United States v. Bowie</u>, 232 F.3d 923 (D.C. Cir. 2000). Here, evidence regarding what was found in the apartment is inextricably intertwined with the charges against Mr. Sweet and the other defendants.

27. The Court's determination about whether to admit evidence of the defendant's uncharged criminal acts under Rule 404(b) of the Federal Rules of Evidence is subject to an abuse of discretion standard of review by the appellate court. <u>United States v. Pindell</u>, 336 F.3d 1049, 1056-57 (D.C. Cir. 2003); <u>United States v. Springs</u>, 936 F.2d 1330, 1331 (D.C. Cir. 1991).

28. The appellate court has recently reaffirmed that the issue of admitting evidence of other crimes is governed by Rule 404(b) of the Federal Rules of Evidence. <u>United States v. Linares</u>, 367

F.3d 941, 946 (D.C. Cir. 2004). Rule 404(b) of the Federal Rules of Evidence provides, in pertinent part, that

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person . . . . It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Cf. Linares, supra, 367 F.3d at 946. Evidence of other crimes should be admitted here because it is relevant to the issue of the defendant's knowledge and/or intent to distribute cocaine base, or to aid and abet the distribution of cocaine base.

29. The court engages in a two-part analysis to determine admissibility in the Rule 404(b) context. First, the Court will consider whether the evidence is probative of some material issue in the case other than character. United States v. Price, 895 F.2d 1431, 1435 (D.C. Cir.), cert. denied, 498 U.S. 825 (1990). Second, if the Court finds that the evidence is relevant, the Court may exclude the evidence only if its probative value is substantially outweighed by the danger of unfair prejudice. United States v. Long, 328 F.3d 655, 662 (D.C. Cir. 1993), cert. denied, 540 U.S. 1075 (2003). Applying this test to the instant case illustrates that the evidence recovered from the apartment should be admissible to establish the defendant's knowledge and intent regarding the cocaine base.

30. Here, the evidence is not being offered to establish any criminal propensity of this defendant or any other defendant. Rather, it is being offered to support the United States' argument that the defendant he knowingly and constructively possessed cocaine base found in the bathroom of the apartment. The drug paraphernalia also illustrates an intent on the part of the defendant to distribute the cocaine base.

31. In Linares, the court began its analysis by noting that the Rule 404(b) is a rule "'of inclusion rather than exclusion.'" 367 F.3d at 946 (citation omitted). However, the court went on to hold in that case that evidence of the defendant's prior conviction for illegally possessing a pistol should not have been admitted because the testimony had already conclusively established that the defendant in Linares had the gun in his actual possession. Put differently, the evidence of the defendant's possession of the firearm was not really an issue in the case. 367 F.3d at 946. The court reasoned that the prior conviction was not evidence, therefore, that made it any more or any less probable that the defendant "knowingly" possessed the firearm. Id. In contrast, in this case, the United States will have to prove that the defendant intended to distribute the cocaine base found in the bathroom.

32. The potential prejudice, if any, associated with the admission of this evidence does not substantially outweigh its probative value. These evidence of the narcotics, guns, scales, and ziplocks are highly probative of the issue of whether the defendant – as well as the other defendants knowingly and constructively possessed the cocaine base and intended to distribute. Therefore, there is nothing in the record to even remotely suggest that the probative value of the evidence recovered from the apartment is substantially outweighed by any alleged potential prejudice.

## **CONCLUSION**

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Suppress and the Motion to Sever, and grant the United States leave to introduce all of the items recovered from Apartment 101.

Respectfully,

KENNETH L. WAINSTEIN
United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing United States' Combined Response to Defendant's Motions to Suppress Statement, To Sever, and Compel Notice of Other Crimes Evidence was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 23st day of March, 2006, upon:

Joanne Vasco
4102 Madison Street
Hyattsville, Maryland 20781

Tony Axam, Jr.
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004

James L. Lyons
Kellogg, Williams & Lyons
1925 K Street, N.W., Suite 200
Washington, D.C. 20006

Diane Lepley
400 Seventh Street, N.W.
Suite 400
Washington, D.CD. 20004

                                                MICHAEL T. TRUSCOTT