UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-61-03 |
| | : | |
| | : | Sentencing: December 1, 2006 |
| TRAVIS SWEET, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**UNITED STATES' MOTION FOR
THREE POINT REDUCTION FOR ACCEPTANCE
OF RESPONSIBILITY
AND MEMORANDUM IN AID OF SENTENCING**

COMES NOW, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and hereby respectfully submits its Motion For Three-Point Reduction For Acceptance of Responsibility and Memorandum in Aid of Sentencing. In support thereof, the United States would respectfully showing the following:

**Motion for Reduction**

A. <u>Factual Summary Offense on January 24, 2006</u>

1. On January 24, 2006, an undercover officer (UC) with the Metropolitan Police Department went to Apartment 101 at 3650 Minnesota Avenue, S.E., Washington, D.C. After the UC knocked on the door to the apartment, it was answered by a black male, who was later identified as the defendant, Travis Sweet. The UC stated to the defendant "what's up? let me get six." and he then handed the defendant $55 in prerecorded Metropolitan Police Department funds. After the defendant went into the apartment for a minute, he returned to the door and took six small ziplocks out of a larger ziplock bag, and handed them to the UC. Each of the six ziplocks contained cocaine

-1-

base. The total weight of this cocaine base was .57 grams. The defendant returned into the apartment.

    2. A few moments later, members of the Metropolitan Police Department executed a search warrant at Apartment 101. A police officer found the defendant hiding in the bathroom. The officer also found the defendant's identification card floating in the toilet bowl, along with a plastic bag that contained cocaine base. The weight of this cocaine base was 34.2 grams. The defendant was positively identified by the UC as the person who distributed the cocaine base. In a search incident to arrest, the police recovered $226 in United States Currency, including the $55 in prerecorded funds.

B. <u>Factual Summary Offense on May 18, 2006</u>

    3. On May 18, 2006, at approximately 12:50 p.m., members of the Metropolitan Police Department were working with a cooperating witness (CW). While under the observation of the police, the CW arranged, via a telephone conversation, to purchase cocaine base from the defendant, Travis Sweet. The defendant agreed to sell the CW a "quarter and three eight balls" of cocaine base for $725.

    4. Pursuant to the agreement, the sale was to occur in the 3300 block of Brother Place, S.E., Washington, D.C. The CW was searched by the police and found to not be in possession of any contraband. The CW was then fitted with a visual recording device, as well as a short distance radio transmitter. The CW and the defendant met at the prearranged location at approximately 1:23 p.m. When the defendant arrived, the CW and the defendant had a brief conversation about the purchase, which was overheard through the radio transmitter by the police. The CW gave then the defendant $730 in Metropolitan Police Department prerecorded funds and the defendant gave cocaine base to

the CW. The weight of this cocaine base was 16.8 grams. The defendant told the CW that "I just sold a few, this shit is butter." The CW and the defendant parted company shortly thereafter.

5. The entire transaction was recorded through the visual recording device on the CW. The CW was then picked up by the police and turned over the cocaine base.

B. <u>Defendant's Acceptance of Responsibility</u>

6. The defendant expressed an early interest in entering into a plea. Because of the defendant's early acceptance of responsibility, also pursuant to the plea agreement, the United States was able to conserve valuable prosecution resources and the defendant is entitled to a three-point reduction for acceptance of responsibility pursuant to Section 3E1.1 of the United States Sentencing Guidelines. For these reasons, the United States respectfully moves the Court to award the defendant a three point reduction for acceptance of responsibility.

**Memorandum in Aid of Sentencing**

7. Based on the information set forth in the Presentence Investigation Report (PSR), the defendant's base offense level is governed by the fact that defendant pled guilty and accepted responsibility for unlawfully distributing cocaine base on January 24, 2006 in Case Number 06-061 and unlawfully distributing 5 grams or more of cocaine base on May 18, 2006 in Case Number 06-156. The defendant's offense level is first calculated by combining the total amount of cocaine base in accordance with § 3D1.2(d) of the U.S.S.G. The offense level was then adjusted downward in the PSR two levels pursuant to the safety valve provision of the guidelines. Finally, in the event that the Court grants the three-point reduction, the defendant's offense level will be 27. The defendant criminal history category is I. Accordingly, pursuant to the sentencing guidelines, the defendant's potential sentence is 70 to 87 months. The government is, pursuant to the terms of the plea

agreement in this case, recommending that the defendant be sentenced to 70 months.

8. According to the PSR, the defendant does not have a criminal record. Similarly, the defendant does not have an employment record and it appears that the defendant supports himself by selling narcotics.

9. It is important to recall that the defendant sold crack to an undercover officer from an apartment on Minnesota Avenue in the first case and, thus, made detection by law enforcement all the more difficult. While on release in 06-061, the defendant twice sold narcotics to a cooperating witness who was working with the police.[1] Moreover, it should not be lost on this Court that selling crack cocaine is a very serious offense even if the defendant were a first time offender.

10. This sentence is supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a). This provision provides, in pertinent part, that when fashioning a sentence, courts should consider:

(a). The circumstances surrounding the offense and defendant's criminal history: As mentioned above, the defendant sold narcotics to an undercover officer one occasion and twice sold narcotics to a cooperating witness. These last two transactions occurred while the defendant was on release. Thus, while this may be the first time that the defendant is going to be sentenced for his criminal behavior, the record here demonstrates that the defendant is committed to engaging in criminal behavior. It is also important to recall that the defendant's criminal behavior involves a significant amount of narcotics.

(b). The seriousness of the offense and the need to promote respect for the law and

---

[1] The defendant was indicted for both transactions. Pursuant to the terms of the plea agreement, the defendant pled guilty to one count and the other count is being dismissed.

punishment: As mentioned above, the defendant sold narcotics from an apartment that had effectively been converted from a residence to a store where one could buy all sorts of illegal narcotics. This not only presented a danger to the community through the victimization of drug addicts, but it also created a dangerous and unhealthy environment for the other people who lived in that building. In fairness, it was not the defendant's apartment and he was not the only selling drugs from the apartment. However, the defendant's role in creating and taking advantage of this situation should not be ignored by the Court. Likewise, on the two occasions when the defendant sold to a cooperating witness, the transactions took place on the same block in broad daylight. Again, the defendant's criminal behavior presented a serious risk of danger for the families that lived on that street.

(c). Potential deterrence: In light of the fact that the defendant committed the second offense while on release, it is the United States' view that a significant period of incarceration would deter those who commit crimes while on release.

(d). Protecting the public: The record amply demonstrates the need to protect the public from the defendant's criminal behavior.

(e). The needs of the rehabilitative needs of the defendant: There are none. The defendant is a well-educated individual who stands before the Court with employment skills. Nonetheless, the defendant is committed to engaging in criminal behavior. The reason is simple. The defendant chooses to engage in this behavior.

### Defendant's Sentencing Memorandum

11. The defendant argues for a downward departure based upon the fact that the defendant does not have a criminal record and gave a statement to the police. Defendant's Sentencing

Memorandum, pp. 1-2. In sum, the Defendant is asking the Court to award a two-level reduction pursuant to § 5C1.2 of the United States Sentencing Guidelines. This provision is commonly referred to as the "safety valve provision." The Court should deny the defendant's request because the defendant has failed to meet his burden of proving by a preponderance of the evidence that he is entitled to the reduction. United States v. Mathis, 216 F.3d 18, 29 (D.C. Cir. 2000). Here, the defendant failed to provide a truthful statement to the police about the circumstances of his offenses.

12.  While the defendant's sentencing memorandum suggests that the reduction should be awarded because the United States offers "no basis" for suggesting that the defendant has been untruthful, it is the defendant who has to establish that he gave truthful and complete information to the police. See e.g., United States v. Ramirez, 94 F.3d 1095, 1101 (7th Cir. 21996)(refusing to put the onus on the government to show that the statement was not truthful or complete). The defendant has simply failed to do so.

13.  Although the defendant had a significant amount of narcotics in his possession after he sold six ziplocks to an undercover officer from Apartment 101, and was able to twice sell a significant amount of narcotics to a cooperating witness, the defendant told the police that he obtained his drugs by approaching a crack head at a gas station, who he referred to an "Unc". The defendant told the police that he would go to the gas station whenever he needed drugs and approach Unc. In turn, Unc would walk around the corner with the defendant's money and buy narcotics from an individual that the defendant was unable to see and did not know. This story simply does not make sense and represents a fabrication of the defendant. For example, it strains reason to believe that the defendant would give money to a crack head and allow him to leave the scene and buy drugs without having any idea from whom and where the crackhead was obtaining the drugs. Also, the

ease with which the defendant appears to have been able to obtain narcotics undercuts the idea that he would rely on the presence of an unknown crackhead to be at a gas station. The defendant offers absolutely no objective basis for the Court to accpet his story as being truthful and complete.

14. Noteworthy, the defendant also told the police that – despite knowing and loving Alonzo Patrick and Jerome Kinard like brothers, who have already been sentenced by this Court – he did not see anyone selling narcotics from Apartment 101. This, too, does not make sense. Upon executing the search warrant, the police recovered a large amount of crack cocaine, powdered cocaine, PCP, ecstasy, marijuana, a wide assortment of drug paraphernalia and several guns. According to the defendant, people would simply knock on the door and ask for a type of drug and whoever happened to be selling that type of drug would go to the door and make the sale. Nonetheless, the defendant told the police that he never observed Mr. Patrick or Mr. Kinard sell drugs and he did not know where they obtained their stashes.

15. In short, the defendant would have the Court and the police that he was regularly able to obtain a significant amount of drugs from an unknown source through the use of a crackhead. Likewise, despite his close relationship with Mr. Patrick and Mr. Kinard and the overwhelming amount of contraband in Apartment 101, the defendant would have this Court rule that he has proven that he was being truthful with the police.

16. In sum, the United States asks that the Court disallow the two point reduction. In the event that the Court finds that the defendant has not met his burden of proof, the defendant's range under the sentencing guidelines would be 87 to 108 months. In such an event, the United States recommends that the defendant be sentenced to 87 months of incarceration.

        Respectfully,
        JEFFREY TAYLOR
        United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010